issued and their books and papers seized, and they afforded important testimony in behalf of the government upon the trial of the action against them. It is now claimed in behalf of Dowling that he was in fact the sole informer; that from him McCoy and Bartlett obtained the information which established the guilt of Stockwell & Co., and that these officers were then acting only in compliance with the instructions of their superior officers in obtaining this information from Dowling and presenting it to the district judge as evidence to authorize the search warrant. It is quite certain that most important evidence was thus elicited from Dowling without which the government would not have been able to ferret out the fraud and its perpetrators; but this evidence was communicated to the officers where they had no official authority whatever, and moreover was not the only evidence offered in the trial to establish the guilt of the parties, as their own books and papers were very important testimony in fixing upon them a guilty knowledge. Of all the claimants, Johnson appears to have contributed the least to the success of the undertaking, and yet he is joined with Dowling in the petition that they may be adjudged entitled to the whole share. Under the decisions of this court, there can be no question that a revenue officer under certain circumstances may be entitled to claim as an informer; and I am of opinion that these four persons having each borne their respective parts in procuring the necessary information and evidence which resulted in the conviction, and having in the outset agreed in writing that they would make common cause of the undertaking, would work together in accomplishing it and share equally the advantages to be realized therefrom, are thereby now precluded from any inquiry by the court as to the degree of benefit which each conferred by his individual services. Good faith requires that they should abide by their contract, and that neither of them should be permitted without the consent of the others to repudiate it and by extrinsic evidence endeavor to satisfy the court that one or more of the associates did not by his services aid equally with the others in the advancement of the common purpose. Especially should such an agreement under the circumstances be obligatory upon Dowling, as he was well aware of the amount of evidence he could produce to ensure a conviction, and before making any disclosure whatever, acting undoubtedly for his own interest as he understood it, insisted that the officers should procure such further evidence as could be obtained by them, and should prosecute the suits to judgment.

This agreement was not without consideration, being mutual, and was not in contravention of law, and if Dowling should receive the full amount. I hold he would be accountable to McCoy and Bartlett for their respective proportions of it. In the distribution of this fund, it is the duty of the court to ascertain the parties beneficially interested and who are legally entitled to hold it, and to decree the payment to them directly rather than subject them to the expense and delay of further controversy with Dowling for the recovery of their proportion from his hands if he should receive it. In suits at common law, if justice can be done between the parties directly, and circuity of action thereby be avoided, the courts do not hesitate to adopt such a course and allow the party to recover that to which he is entitled, and which he might by ulterior proceedings obtain from one who should receive it from the defendant; and this court cannot hesitate as to the propriety of applying this rule in the distribution of money in its registry, it being entirely free from any technical difficulties which sometimes arise in proceedings at common law.

It is claimed that if the court is of opinion that Dowling was within the language of the act of 1867 "the person giving the information which led to the prosecution," that then the court is bound by the provisions of that law to award to him the informer's share, although he may by his contract be bound to pay the other parties their proportions of it. Under ordinary circumstances such would probably be the result; but the court is of opinion that parties jointly engaged in such an enterprise may, as between themselves, agree as to the distribution of the informer's share; that such an agreement when fairly made is conclusive between them as to their respective rights, and should be recognized and enforced by the court as the only proper evidence in a hearing upon this question in any controversies between the parties relating thereto.

Decree that Bartlett, McCoy, Johnson and Dowling were joint informers, and that the informer's share be divided equally among them.

---

UNITED STATES (STOCKWELL v.). See Cases Nos. 13,466 and 13,467.

---

## Case No. 16,407.

### UNITED STATES v. STONE.

[Cited in U. S. v. Jackson, Case No. 15,458. Nowhere reported; opinion not now accessible.]

---

## Case No. 16,408.

### UNITED STATES v. STOTT.

[2 Cranch, C. C. 552.] [1]

Circuit Court, District of Columbia. April Term, 1825.

DISTRESS FOR RENT—POWERS OF BAILIFF.

A bailiff cannot lawfully force himself into a house, by the outer door (although partially opened by one within), to make a distress for rent.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]